In the

# United States Court of Appeals

### For the Seventh Circuit

No. 09-3618

JAMES OWENS,

*Plaintiff-Appellant,*

*v.*

CHARLES HINSLEY, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06-CV-380-DRH—**David R. Herndon**, *Chief Judge*.

SUBMITTED NOVEMBER 30, 2010*—DECIDED MARCH 18, 2011

Before EASTERBROOK, *Chief Judge*, and POSNER and WOOD, *Circuit Judges*.

WOOD, *Circuit Judge*. James Owens, an Illinois prisoner, was housed at the Menard Correctional Center when

---

* After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. See FED. R. APP. P. 34(a)(2)(C).

he filed this action under 42 U.S.C. § 1983. The place of confinement is all that connects his hodgepodge of allegations, which the district court organized into seven claims (some with subparts) against the 15 named defendants. The court dismissed five of those claims at screening, see 28 U.S.C. § 1915A, and granted summary judgment for the defendants on the other two. Finding no merit in any of Owens's arguments on appeal, we affirm.

The number of claims and defendants reflected Owens's failure to observe the requirements of Federal Rule of Civil Procedure 20(a)(2) with respect to joinder of parties. We emphasized in *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), that unrelated claims against different defendants belong in separate lawsuits, not only "to prevent the sort of morass" produced by multi-claim, multi-defendant suits like this one, but also to ensure that prisoners pay all fees required under the Prison Litigation Reform Act, see 28 U.S.C. § 1915(b), (g). Complaints like this one from Owens should be rejected, *George*, 507 F.3d at 607, either by severing the action into separate lawsuits or by dismissing improperly joined defendants, see FED. R. CIV. P. 21; *DirectTV, Inc. v. Leto*, 467 F.3d 842, 844-45 (3d Cir. 2006); *Elmore v. Henderson,* 227 F.3d 1009, 1012 (7th Cir. 2000); *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988). This is not, however, a jurisdictional flaw, and so we proceed to analyze Owens's allegations.

The evidence before the district court at summary judgment can be summarized as follows. Owens began a hunger strike in April 2004 to protest what he viewed

as indifference to his grievances about conditions at Menard. He publicized his strike by communicating with state officials and prison employees. After 21 days Owens went to the infirmary, where he remained for four days. He then voluntarily ended his hunger strike after being assured that his grievances would be addressed. Owens, who is 5' 4" and averages 195 pounds, lost about 20 pounds during the hunger strike but regained all of that weight. There is no evidence that he suffered medical complications.

Believing that his grievances were still being ignored, Owens began a second hunger strike in June 2004. After 25 days prison officials moved him from his cell to the infirmary, where for almost three more weeks he refused to eat. At that point administrators obtained an order from a state court allowing them to force-feed Owens, who ended the hunger strike on August 5 after the first use of a feeding tube. This time he had lost over 30 pounds, but again there is no evidence of medical complications. On August 8 he submitted a grievance to his counselor complaining that during the two hunger strikes he was left in his cell without medical monitoring for a total of 49 days. Owens maintained that he should have been housed in the infirmary all that time. His counselor did not respond.

In January 2005, Owens was placed in disciplinary segregation and assigned to a cell with inmate Gordon. For a month the two got along, but then without warning or explanation Gordon hit Owens in the mouth, splitting his lip. Gordon also threatened to hit him again. Owens

reported the punch to the guards on duty—defendants Anderson and Niepert—but at summary judgment he never said whether he also disclosed Gordon's threat. The two guards remained silent when Owens asked to be released from his cell. Later that afternoon, when a different guard was in view, Gordon swung again. Owens evaded the punches, and the guard quickly intervened. Owens was taken to the infirmary and given a salt-water rinse to treat the small lacerations left in his mouth by Gordon's earlier punch. (Owens says in his complaint and appellate brief that he was left with a scar on his lip, but he submitted no admissible evidence to substantiate this allegation.)

Owens next was housed with inmate Autin. For a month they coexisted peacefully, but Autin ran out of drugs to control his mental illness and cautioned Owens to move elsewhere because he might lose control. Owens told no one about this warning. On Autin's fourth day without medication, he swung at Owens but landed no punches. Owens told a guard—defendant Smith—about the incident, and Autin chimed in that he would go after Owens again. Owens asked to be moved, but Smith said he could not do anything that day. Hours later Owens was conversing with another guard about moving when Autin rushed from behind and shoved him into the bars. The guard took Owens to the infirmary with a bump on his forehead and a small abrasion on one elbow.

These events underlie four of the claims in Owens's complaint. In one of these claims he contends that unspeci-

fied officials violated the Constitution by ignoring his many and varied grievances; in another he insists that his "right to peaceful demonstration" was infringed when his second hunger strike was forcibly ended. At screening the district court dismissed both of these claims as frivolous, and we concur with this assessment. Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of Owens's grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim. See *George*, 507 F.3d at 609; *Grieveson v. Anderson*, 538 F.3d 763, 772 & n.3 (7th Cir. 2008); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996). And as we said in *Freeman v. Berge*, 441 F.3d 543, 546-47 (7th Cir. 2006), an inmate conducting a hunger strike does not have a constitutionally protected right to refuse life-saving medical treatment.

Two other claims proceeded to summary judgment. Owens contended that he should have been moved to the infirmary for the duration of both hunger strikes and, because he was not, that several named defendants had been deliberately indifferent to the state of his health. He also asserted that guards Anderson, Niepert, and Smith violated the Eighth Amendment by failing to protect him from the second assaults by Gordon and Autin. The district court concluded that Owens had failed to exhaust his administrative remedies for the healthcare claim. See 42 U.S.C. § 1997e(a); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The court rejected Owens's failure-to-protect claims for lack of an eviden-

tiary showing that could have supported a verdict in his favor.

The latter ruling is correct. On the evidence presented at summary judgment, a jury could not reasonably find that the guards, by declining to move Owens immediately to another cell, deliberately ignored a substantial risk that he would suffer serious harm at the hands of his cellmates. See *Farmer v. Brennan*, 511 F.3d 825, 834 (1994); *Klebanowski v. Sheahan*, 540 F.3d 633, 637 (7th Cir. 2008). Gordon's one surprise punch and Autin's wild swings did not give the defendants reason to believe that Owens faced an imminent and substantial threat to his safety. The litigants did not submit testimony from Anderson, Niepert, or Smith, and so the record does not reveal whether they reported the initial scraps to their superiors or took other reasonable steps to prevent a repetition. It does not matter. Even if the three defendants shrugged off the minor fisticuffs, the evidence at summary judgment shows only that they misjudged the rifts between Owens and the cellmates he had bunked with amicably for a month. Owens offered no evidence that he told Anderson or Niepert about Gordon's threat to strike again, and Smith had no reason to suspect that Autin, who had not managed to land a punch, was a serious threat to Owens. Nothing indicates that the risk either time to Owens was more than minimal, see *Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008), and when another scuffle signaled that tension remained, prison staff quickly stepped in and separated the inmates. Summary judgment for the guards was appropriate.

The district court's ruling on the medical-care claim requires a closer look. At summary judgment Owens tendered a copy of his grievance, dated August 8, 2004, alleging that he was left in his cell without medical attention during substantial portions of his hunger strikes. According to Owens, he gave this grievance to his counselor but never received a reply, and so he forwarded copies to the grievance officer in February 2005 and to the Administrative Review Board in June 2005. The district court acknowledged the significance of this grievance but concluded that, since Owens had not discussed it in an affidavit or deposition, he lacked admissible evidence that he gave the grievance to prison officials. In this respect, the court erred. Owens verified his response in opposition to the defendants' motion for summary judgment, and that was enough to make his allegations admissible. See 28 U.S.C. § 1746. As the district court noted, Owens's submission was not literally an "affidavit" because he did not swear to the content in the presence of someone authorized to administer oaths. See *Elder-Keep v. Aksamit*, 460 F.3d 979, 984 (8th Cir. 2006); *Pfeil v. Rogers*, 757 F.2d 850, 859 (7th Cir. 1985); BLACK'S LAW DICTIONARY 66 (9th ed. 2009). Nevertheless, a declaration under § 1746 is equivalent to an affidavit for purposes of summary judgment. See, *e.g.*, *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 749 n.5 (11th Cir. 2010); *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004); *Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

Yet even taking Owens at his word, we conclude that he failed to exhaust. When an informal resolution is not

achieved by talking to a counselor, an inmate in Illinois has 60 days from the date of the underlying incident to submit a written grievance to the facility's designated grievance officer. 20 ILL. ADMIN. CODE § 504.810; *Dole*, 438 F.3d at 809; *Dixon v. Page*, 291 F.3d 485, 489 (7th Cir. 2002). Owens ended his second hunger strike three days before he drafted the August 8 grievance, and so he had until early October 2004 to give it to the grievance officer. By his own admission, Owens inexplicably waited until February 2005. By then it was too late.

In the alternative the defendants argue that a lack of evidence provided an independent basis for dismissing this claim. We agree with this point as well. Owens's complete deposition was tendered at summary judgment, and his testimony confirms that he lost weight and became weak while on his hunger strikes but suffered no medical complications. Prison administrators have a right and a duty to step in and force an inmate to take nourishment if a hunger strike has progressed to the point where continuation risks serious injury or death. *Freeman*, 441 F.3d at 546-47. But if weight loss and temporary discomfort are the only consequences of refusing to eat, then the inmate's choice to go on a hunger strike raises no Eighth Amendment concern. See *id*. at 547; *Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005). From all that we can see, Owens's claim is baseless. Either this ground, on our *de novo* review, or his failure to exhaust leads to the same conclusion: dismissal was required.

That leaves the other three claims dismissed at screening, in which Owens principally alleges that he

suffered retaliation for filing grievances and was denied medical and dental care. At screening the district court signaled that it would have allowed these claims to proceed except that Owens had not linked his allegations of unconstitutional conduct to identifiable defendants (or, in a few instances, had named only defendants who could not personally have been involved in the alleged violations). See *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). These claims were dismissed without prejudice. Owens does not argue that the court's basis for dismissal was erroneous, but instead contends that his proposed amended complaint, which does identify specific defendants, should have been allowed.

Owens filed his amended complaint in March 2007, eight months after he filed suit and three months after the district court had screened the original complaint. The 246-paragraph document adds 21 pages and 29 defendants to the original complaint, and many of its allegations date back several years, some as far as 2001. A magistrate judge struck the new complaint. See FED. R. CIV. P. 72(a); S.D. ILL. L. R. 72.1(a)(1). The court was uncertain whether the document had arrived in the clerk's office before a joint answer filed by several defendants, see FED. R. CIV. P. 15(a), but since Owens had not complied with local procedure for amending a complaint, the court struck the proposed pleading, see S.D. ILL. L. R. 15.1. The court's order offered corrective instructions in the event that Owens wanted to try again, but when he did the following month he apparently

resubmitted the same complaint. This time the magistrate judge denied leave to amend because Owens had realleged the two claims that were dismissed with prejudice at screening.

We review a denial of leave to amend only for abuse of discretion, *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008); *Soltys v. Costello*, 520 F.3d 737, 743 (7th Cir. 2008), and we find none here. Even if Owens made progress in curing the deficiencies in the three claims that were dismissed without prejudice at screening, he also tried to evade the § 1915A ruling by pressing forward with the claims that were dismissed for failure to state a claim. And this action could not have been inadvertent; Owens expanded the two claims to four times their original length. The magistrate judge was not obligated to reward intransigence; these claims are frivolous and again would have faced immediate dismissal. We have held that leave to amend may be denied if the new complaint does not cure deficiencies in the old one and is doomed to the same fate. *E.g., Hukic v. Aurora Loan Servs.*, 588 F.3d 420, 432 (7th Cir. 2009); *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist.*, 133 F.3d 1054, 1057 n.4 (7th Cir. 1998).

We have considered the remaining issues in Owens's brief and conclude that none has merit. For these reasons the judgment is AFFIRMED.