NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 20, 2011[*]
Decided July 20, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 10-3402

| | |
|---|---|
| CHRISTOPHER A. SMITH, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| *v.* | |
| | No. 2:09-cv-0185-JMS-WGH |
| MARCEL ROHANA, et al., *Defendants-Appellees*. | Jane E. Magnus-Stinson, *Judge*. |

**O R D E R**

Christopher Smith has been incarcerated at the Putnamville Correctional Center in Indiana since May 2008. When he entered the prison he was still recovering from multiple fractures to his left leg caused by a car that struck him in September 2007. In this action under 42 U.S.C. § 1983, Smith claims that Dr. Marcel Rohana, the former medical director at Putnamville, was deliberately indifferent to his preexisting injury and also ignored his need

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

for further medical care after a slip-and-fall at the prison aggravated the injury to his leg. Smith also sued two members of Dr. Rohana's staff, but neither is implicated by the evidence at summary judgment or even mentioned in Smith's brief on appeal, and so we need not say anything more about them. The district court granted summary judgment for Dr. Rohana, and we affirm that decision.

Smith's injury required surgery and the insertion of fibular and tibial plates that, he says, were intended to be permanent. By his account, the leg was healing without any sign of infection when on May 14, 2008, he arrived at Putnamville from the intake unit of the Indiana Department of Correction. A doctor at the intake unit had sent along a prescription for the antibiotic Keflex (which would have lapsed on May 23), but the medication did not accompany Smith. Two days later a doctor at Putnamville prescribed a different antibiotic, Bactrim DS, through May 26. That drug was prescribed again on June 9 when an infection in Smith's leg was detected. At summary judgment Dr. Rohana submitted medical records indicating that the prescribed antibiotics were dispensed. Smith, though, essentially denied that he always received the drugs in May (the medical records from Putnamville, he said, must have been falsified), though he admitted receiving the Bactrim DS prescribed in June. The infection for which it was prescribed subsided, but on August 28, 2008, another infection was noted around the surgical incision; more antibiotics were prescribed, and on September 2 a surgeon recommended removing the tibial plate from Smith's leg. That procedure was performed 10 days later. Smith's argument at summary judgment is difficult to follow; essentially he contended that the overall care he received at Putnamville was substandard. If his submission is read liberally, it was Smith's contention that the second surgery became necessary because he was not consistently given antibiotics as directed, and also because he did not see Dr. Rohana until several days after his slip-and-fall in July.

The district court concluded that the evidence at summary judgment established that Smith had received regular treatment and an "abundance of care" for his leg injury. The court reasoned that Smith had failed to dispute Dr. Rohana's evidence that the prescribed antibiotics were dispensed, since, the judge explained, Smith had not submitted "competent admissible evidence, in the form of an affidavit or otherwise," to back up his contention that the prison's medical records had been falsified. And, the court continued, although Smith did not see Dr. Rohana (or another physician) until four days after his July slip-and-fall, he was seen by a nurse the day of the accident. She consulted with Dr. Rohana, who prescribed pain medication and ordered x-rays, which, when taken three days later, showed no sign that Smith's accident had caused complications to his leg injury. Dr. Rohana's followup visit the next day, and the additional x-rays and ultrasound that a local hospital conducted at his direction, confirmed the absence of abnormalities or new fractures. The court noted, further, that Smith had received prompt attention in August when the infection which led to removal of his tibial plate was observed.

On appeal Smith contends that the medical care he received at Putnamville for his leg injury was substandard, and in fact he says in his brief that the prison's medical unit was mismanaged and that its staff neglected him. Negligence, though, is not deliberate indifference, and does not give rise to liability under the Eighth Amendment. *Gayton v. McCoy*, 593 F.3d 610, 623 (7th Cir. 2010); *Hayes v. Snyder*, 546 F.3d 516, 527-28 (7th Cir. 2008). With one exception, Smith's assertion that he didn't receive adequate care boils down to disagreement with the medical judgment of his several prison doctors, in particular about what drugs to prescribe and for how long. Smith apparently believes that he should have been given a nonstop regimen of antibiotics, but none of his evidence supports that conclusion. And, regardless, Smith's unwillingness to accept the professional judgment of the physicians who treated him is not a basis for claiming deliberate indifference. *See Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006).

Smith does make one valid point about the district court's ruling: The judge assumed that Smith lacked admissible evidence to support the contention that in May he didn't always receive his prescribed antibiotics, and thus the court accepted as undisputed Dr. Rohana's evidence that the drugs were dispensed. Smith's response to the motion for summary judgment, however, was in the form of a declaration under 28 U.S.C. § 1746 and thus had the same effect as an affidavit. *See Owens v. Hinsley*, 635 F.3d 950, 955 (7th Cir. 2011); *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996). And in that response—reading it in the most favorable light—Smith asserts that he did not receive the antibiotics on a consistent basis.

Smith is not helped, though, by his own testimony that the medical staff did not always give him the antibiotics in May as prescribed. To start, there is no medical evidence of a link between the missed antibiotics in May and the infection in August that preceded the removal of Smith's tibial plate. Moreover, without evidence of deliberate misconduct on the part of the medical staff, the fact that Smith didn't always receive his prescription drugs suggests negligence, at most. And most importantly, Smith has sued only Dr. Rohana, who did not even prescribe the antibiotics in May and was not tasked with administering them on a day-to-day basis. Dr. Rohana was the medical director, but like any defendant sued under § 1983, he cannot be liable absent personal involvement, and here there was none. *See Minix v. Canarecci*, 597 F.3d 824, 833-34 (7th Cir. 2010); *Hernandez v. Keane*, 341 F.3d 137, 144-45 (2d Cir. 2003); *Farrow v. West*, 320 F.3d 1235, 1238 n.1 (11th Cir. 2003); *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 846-47 (6th Cir. 2002); *Farmer v. Moritsugu*, 163 F.3d 610, 610-11 (D.C. Cir. 1998). Dr. Rohana participated in other aspects of Smith's care, but there is no evidence that he had a hand in dispensing Smith's antibiotics or that he was aware that Smith did not always get those drugs. Thus, the dispute about whether Smith

always received his prescribed antibiotics was not material in this lawsuit against
Dr. Rohana.

                                                          AFFIRMED.