**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted August 31, 2011[*]
Decided September 9, 2011

**Before**

RICHARD A. POSNER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 11-1535

| | |
|---|---|
| CARLOS A. MONTAÑEZ, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Southern District of Illinois. |
| *v.* | No. 10-419-MJR |
| ADRIAN FEINERMAN, et al., *Defendants-Appellees*. | Michael J. Reagan, *Judge*. |

**O R D E R**

Carlos Montañez, an inmate at Menard Correctional Center in Illinois, filed suit under 42 U.S.C. § 1983 claiming principally that four members of the prison healthcare staff deliberately ignored his medical conditions. At screening the district court dismissed much of the complaint for failure to state a claim, see 28 U.S.C. § 1915A(b)(1), and dismissed the remainder on the ground that Montañez had not exhausted his administrative remedies

---

[*]The appellees were not served with process in the district court and are not participating in this appeal. After examining the appellant's brief and the record, we have concluded that oral argument is unnecessary. Accordingly, the appeal is submitted on the appellant's brief and the record. See FED. R. APP. P. 34(a)(2)(C).

before filing suit, see *id*. § 1997e(a). Montañez appeals, and at this stage we accept as true the allegations in his complaint and attachments. See *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002).

Montañez suffers from prostatitis, kidney stones, and pain in his right hip, knee, and hamstring. His prostatitis, an inflamation of the prostate gland that can cause painful urination, was diagnosed around the beginning of 2009. By February of that year, Montañez had been treated by a prison physician and referred to a urologist, who in April 2009 prescribed antibiotics, the muscle relaxant Flomax, and the pain reliever Ultram. Montañez continued to complain of pain and difficulty urinating and was sent to the urologist again in August 2009. The urologist again prescribed Ultram, though Montañez waited several weeks before he got it. Montañez also underwent a prostate ultrasound in February 2010 and was told that the results were normal. He later complained about not seeing the urologist regularly, though he was still seeing prison doctors and nurses. His prescriptions for Flomax and Ultram were renewed in April 2010, and he again was given an antibiotic. Dr. Magid Fahim, the current medical director at Menard, may have stopped the Ultram prescription in May 2010, but Montañez filed an emergency grievance and got it back, correcting the "mistake," he said, after "several days" of delay.

Dr. Feinerman, a prison physician and former medical director, first suggested in August 2009 that Montañez might also have kidney stones. From then until October 2009 he complained in grievances that his kidney stones had not been treated and that he wanted them removed. He still had not received any treatment when around the beginning of June 2010 he passed two stones and had blood in his urine.

Montañez also suffers from pain in his right hip, knee, and hamstring. At some point he was prescribed Naproxen for arthritis and Motrin for pain, but he complained in June 2009 that his pain had worsened and the medications were no longer adequate. Nurse Christine Brown responded to his request and told him that he was on the list to see Dr. Feinerman. After that, as recounted in his many grievances, Montañez repeatedly saw doctors and nurses for his leg pain but was never satisfied with the outcome. When Dr. Feinerman ordered x-rays of his right leg in July 2009, Montañez countered that he wanted further tests. When Dr. Fahim prescribed Motrin in March 2010 after Montañez had aggravated an old knee injury, he demanded an MRI, surgery, and more pain medication but was refused by both Dr. Feinerman and Dr. Fahim. Several months later Nurse Brown told Montañez that his knee x-ray had not shown a fracture or abnormality and that the doctors did not feel an MRI or orthopedic referral was medically necessary.

Montañez filed his complaint in the district court in June 2010 and appended over 100 pages of correspondence discussing his concerns about medical issues. That

correspondence, virtually all from 2009 and much of it informal complaints directed to his prison counselor, fleshes out the allegations in Montañez's complaint. He claims that Dr. Feinerman, Dr. Fahim, and Nurse Brown showed deliberate indifference to his medical needs by failing to investigate properly the origin of his symptoms and providing poor treatment. (Montañez also claims that the administrator of the healthcare unit, as well as the warden and an assistant warden, violated his right to due process by ignoring or mishandling his inmate grievances. Yet as the district court recognized, the Constitution does not obligate prisons to provide a grievance process, nor does the existence of a grievance process itself create a protected interest. *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011); *Grieveson v. Anderson*, 538 F.3d 763, 772-73 (7th Cir. 2008). Thus, if the defendants were not involved in the underlying harm, the mishandling of an inmate grievance alone cannot be a basis for liability under § 1983. *Owens*, 635 F.3d at 953-54; *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007); see *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir. 2005). Since Montañez does not allege that they were personally involved in his medical treatment, we need not say anything more about these defendants.)

In dismissing Montañez's complaint prior to service, the district court concluded that his allegations, for the most part, amounted to a disagreement with the defendants over what medical treatment was appropriate for his conditions. This was true, the court reasoned, as to Montañez's allegations about his prostatitis and the pain in his hip and leg. On the other hand, the court continued, Montañez raised an inference of deliberate indifference about the treatment for his kidney stones and the periods when he went without his pain medication. But those allegations, the court found, had not been exhausted through the prison grievance process. Accordingly, the court dismissed the suit.

On appeal Montañez first challenges the district court's understanding of the allegations about his prostatitis and the pain in his hip and leg. Those conditions, we assume, are sufficiently serious to support a claim for deliberate indifference. But we share the district court's view that Montañez's complaint and its many attachments recount nothing more than dissatisfaction with the course of treatment, which does not rise to the level of a violation of the Eighth Amendment. See *Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010); *Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010); *Norfleet v. Webster*, 439 F.3d 392, 396 (7th Cir. 2006); *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). In his complaint Montañez details the care he received and his disagreements with decisions made by the defendants, but he does not allege that he was refused medical care. In the correspondence attached to his complaint, he does say several times that Dr. Feinerman was ignoring him, but those accusations directed to prison administrators were obviously groundless in light of the course of treatment detailed in his complaint and attachments. See *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (concluding that complaint, which recounted that plaintiff had been seen by prison doctors ten times in three months, at best

alleged "disagreement with medical professionals" but not deliberate indifference); *Dunigan v. Winnebago Co.*, 165 F.3d 587, 591-92 (7th Cir. 1999) (rejecting claim for deliberate indifference where prison staff was "responsive" to plaintiff's medical needs); *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (concluding that plaintiff's claim of deliberate indifference failed where he "repeatedly received treatment"). By Montañez's own account, between February 2009 and April 2010 he was seen for his prostatitis and leg pain by Dr. Feinerman, Dr. Fahim, a Dr. Fuentes, nurse practitioners, and a urologist. (He also mentions being seen by two other physicians but does not specify who or when.) Montañez received an ultrasound, x-rays, and (except for a few disruptions in treatment) medications. He was entitled to adequate, not limitless, treatment. See *Johnson*, 433 F.3d at 1013. And though his condition may have changed or worsened, each time Montañez asked for medical care he got it. He often disagreed with the treatment he received, but his allegations do not state a claim for deliberate indifference.

Montañez also takes issue with the district court's analysis of his allegations about his kidney stones and delays in receiving pain medication. Those allegations, the court concluded, could support a claim for deliberate indifference but were not exhausted through the prison grievance process. As to the medication, Montañez sought to hold Dr. Fahim responsible for the several days in May 2010 when he went without Ultram. He also mentioned, in his complaint, the several-week delay in receiving Ultram in August 2009. But these allegations, even when viewed in the light most favorable to Montañez, fail to present a legally sufficient claim that is "plausible on its face." See *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Though "specific facts are not necessary," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007), a plaintiff must provide enough detail to "present a story that holds together," *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010). Montañez does not claim that any of the defendants were deliberately indifferent to his need for pain medication. In fact, his complaint alleges, inconsistently, both that in May 2010 his Ultram prescription expired and that the medication was "interrupted and stopped by Dr. Fahim." And, the complaint continues, the "mistake" of stopping his Ultram was corrected after he filed an emergency grievance. Whether it was a mistake, see *Spann v. Roper*, 453 F.3d 1007, 1008 (8th Cir. 2006); *Zentmyer v. Kendall Cnty, Ill.*, 220 F.3d 805, 812 (7th Cir. 2000), or a decision by Dr. Fahim to stop or change the medication, see *Jackson v. Kotter*, 541 F.3d 688, 697-98 (7th Cir. 2008), is unimportant; neither possibility would state a claim of deliberate indifference. And we know nothing about any defendant's involvement in the August 2009 delay. Therefore, Montañez fails to state a claim regarding delays in receiving medication; we need not reach the exhaustion question.

As for his kidney stones, we agree with the district court that this aspect of Montañez's complaint was sufficient to state an Eighth Amendment claim for deliberate indifference. His complaint identifies a serious medical need, see *Duckworth v. Ahmad*, 532

F.3d 675, 679 (7th Cir. 2008), and alleges that the defendants have known about it but have not provided any treatment, see *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). The more specific allegations that Montañez makes in the attachments to his complaint bolster his claim. See *Erickson*, 551 U.S. at 94. The district court reasoned, however, that Montañez had not done all that was necessary to exhaust these allegations through the grievance process. But exhaustion is an affirmative defense, so Montañez was not required to set out in his complaint that he pursued all of the prison's internal grievance procedures. See *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Pavey v. Conley*, 544 F.3d 739, 740-41 (7th Cir. 2008). Though Montañez mentioned the administrative grievances and submitted extensive documentation, dismissal on this ground is not appropriate unless the existence of the affirmative defense is "so plain from the face of the complaint" that the suit could be regarded as frivolous. See *Turley v. Gaetz*, 625 F.3d 1005, 1013 (7th Cir. 2010); see also *Arroyo v. Starks*, 589 F.3d 1091, 1096-97 (10th Cir. 2009); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007).

The district court reasoned that Montañez had failed to exhaust because nowhere in his attachments is there evidence that he took an administrative appeal after submitting an initial grievance. On appeal, Montañez concedes that he did not appeal any grievance. But that is because, he says, the grievance process was made "unavailable" to him by virtue of the fact that prison administrators did not respond to his grievances. Attached to his complaint are copies of two grievances, one from August 2009 and the other from October 2009, both complaining about the absence of treatment for his kidney stones. Montañez tells us that neither grievance was ever answered, and if that is true, then he would not have been able to continue the exhaustion process; the process would have been unavailable. See *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005); *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001); *Powe v. Ennis*, 177 F.3d 393, 394 (5th Cir. 1999). For purposes here we must assume that, as he says, Montañez submitted the two grievances but could not pursue the process further because of administrative inaction. It was premature, then, for the district court to dismiss his claim as it relates to these allegations.

Accordingly, the dismissal of Montañez's claim of deliberate indifference is VACATED to the extent that it relates to his allegations of untreated kidney stones, and the case is REMANDED for further consideration of that aspect of his claim. In all other respects the judgment is AFFIRMED.