**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 200046-U

Order filed June 30, 2022

---

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| RICHARD HODGES, | ) | Appeal from the Circuit Court |
| | ) | of the 12th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois. |
| | ) | |
| v. | ) | |
| | ) | |
| MICHELLE A. WILLIAMS, SERGEANT | ) | Appeal No. 3-20-0046 |
| AL TAYLOR, and RANDY PFISTER, | ) | Circuit No. 18-CH-78 |
| | ) | |
| Defendants-Appellees | ) | |
| | ) | |
| (MICHELLE A. WILLIAMS, SERGEANT | ) | |
| AL TAYLOR, ANNA MCBEE, and RANDY | ) | |
| PFISTER, | ) | Honorable |
| | ) | Brian E. Barrett, |
| Defendants). | ) | Judge, Presiding. |

---

JUSTICE LYTTON delivered the judgment of the court.
Justice Schmidt concurred in the judgment.
Justice McDade concurred in part and dissented in part.

---

## ORDER

¶ 1    *Held*: (1) Trial court properly dismissed inmate's section 1983 claims against defendants in their official capacities;
(2)  Trial court properly dismissed section 1983 claims against warden in his individual capacity where inmate failed to allege sufficient facts to support his

claim that the warden was personally responsible for the deprivation of his constitutional rights;

(3) Trial court erred in dismissing section 1983 retaliation claim against correctional officers' in their individual capacities where inmate sufficiently pled his first amendment activity was at least a motivating factor in correctional officers' decision to take retaliatory action against him; and

(4) Dismissal of state claims alleging negligence and intentional infliction of emotional distress were properly dismissed under doctrine of sovereign immunity.

¶ 2       Plaintiff Richard Hodges, an Illinois Department of Corrections inmate, filed a *pro se* complaint against correctional officers Michelle Williams and Sergeant Al Taylor, and Stateville Correctional Center (Stateville) Warden Randy Pfister (defendants), alleging that they violated his constitutional rights under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2012)) and requesting monetary damages and injunctive relief. In addition to his constitutional claims, Hodges asserted claims of negligence and intentional infliction of emotional distress against defendants and a claim against the State of Illinois under a theory of *respondeat superior*. The circuit court of Will County granted defendant's motion to dismiss pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2018)) and dismissed Hodge's first amended complaint with prejudice. Hodges appeals, challenging the trial court's ruling and claiming that the court's dismissal with prejudice was improper. We affirm in part, reverse in part, and remand to the trial court for further proceedings.

¶ 3                                    I. BACKGROUND

¶ 4       In 2016, Hodges was an inmate at the Stateville prison. On March 29, 2016, following a report that a book had been removed from the prison law library without authorization, correctional officer Williams searched Hodges' cell at the direction of Sergeant Taylor. During the search, Williams found the items that had been taken from the law library, as well as a bag of homemade alcohol, a sharpened blade that appeared to be a razorblade, sexually explicit materials, and prescription medication that belonged to another inmate. Hodges was then told to pack a

2

"segregation bag" because he was going to be held in segregation pending disciplinary action. Hodges packed pain medication and three medical braces that he used for his wrist, elbow, and abdomen. According to Hodges' complaint, a Stateville treating physician prescribed the braces to address a medical issue involving lesions on Hodges' skin. In his bag, Hodges also packed the medical permits for the braces, signed the treating physician, and two large envelopes containing legal documents related to his pending postconviction petition.

¶ 5     While Sergeant Taylor and other correctional officers were escorting Hodges to segregation, Williams searched his bag. The bag was returned to Hodges four hours later. Hodges claimed that his pain medication, medical braces and legal documents had been removed. Hodges admitted that some of the legal paperwork was returned to him a few weeks later but claimed that a large portion of the documents remained missing.

¶ 6     On April 29, 2016, Hodges filed a grievance complaining that Williams and Taylor "threw away" his missing items. He wanted his items returned and requested money damages. A grievance counselor filed a written response to Hodges' claims on May 10, 2016. In his response, the counselor stated that "according to c/o Williams and c/o Taylor, [Hodges'] property was packed appropriately and inventoried" and that "proper documentation was filled out and sent with [Hodges'] property."

¶ 7     On September 5, 2016, Hodges filed an emergency grievance directly with Warden Pfister. The grievance alleged the same facts previously set forth in the April 29 grievance, claiming that Williams and Taylor had confiscated his prescription medication and his medical braces and destroyed some of his legal materials. Pfister reviewed the grievance on September 8, 2016, and denied it.

3

¶ 8    On October 18, 2016, a grievance officer reviewed the grievance Hodges originally filed in April. The officer reported that, according to medical records, Hodges was seen by medical staff on April 14, 2016, and April 18, 2016, and that new medication was prescribed to him. Records also indicated that Hodges received another elbow brace on September 2, 2016, and a wrist brace on September 13. In light of these findings, the officer recommended that the grievance be denied, and Pfister concurred in the recommendation.

¶ 9    In January 2018, Hodges filed an amended complaint for administrative review in the Will County circuit court. The complaint included six counts and named Williams, Taylor, and Pfister as defendants in their individual and official capacities. In counts I, II, and III, Hodges asserted constitutional claims under section 1983, and in counts IV, V, and VI, he alleged state law claims, as follows:

¶ 10    In count I, Hodges claimed that defendants violated his rights under the eighth amendment rights by acting with deliberate indifference to his serious medical needs and interfering with his medical treatment and care. He claimed that Pfister showed deliberate indifference to his medical needs by (1) deliberately disregarding his "emergency grievance," (2) allowing Williams and Taylor to engage in intentional harmful acts against him, and (3) failing to act. In addition, Hodges claimed that Williams and Taylor knew he needed his medication and medical braces and knew their failure to provide such items would cause him severe pain and suffering. He sought preliminary and permanent injunctions barring defendants from taking his medication and medical braces in the future without consulting a physician. He also requested judgment against defendants for compensatory and punitive damages.

¶ 11    Count II claimed that Williams and Taylor retaliated against him for exercising his first amendment rights by destroying his legal documents and interfering with his medical care.

4

According to the allegations in support of his retaliation claim, Hodges informed "F-house Officer Brewer" that his items had been removed from his bag and that he needed his medication and medical braces to manage his pain. He also told Brewer that he needed the legal documents for an upcoming hearing. Brewer subsequently informed Hodges that Williams and Taylor admitted that they took the items and said that Hodges "could just file another grievance about it." Hodges asserted that Williams and Taylor's adverse action of taking his medication and braces caused him physical pain and suffering. He further alleged that by destroying his legal papers, Williams and Taylor interfered with his ability to present evidentiary support in his postconviction proceedings, which resulted in a hearing that was fundamentally unfair. Hodges claimed that Williams and Taylor acted intentionally and in retaliation for prior grievances he filed against other correctional officers.

¶ 12        In count III, Hodges claimed that defendant Pfister failed to intervene to protect Hodges from the constitutional violations alleged in counts I and II, and that Pfister's actions were undertaken "with malice and with reckless indifference to [Hodges'] rights."

¶ 13        Counts IV, V, and VI involved state law claims. In counts IV and V, Hodges alleged negligence and intentional infliction of emotional distress. In the alternative, Hodges claimed that defendants acted with indifference to his serious medical and legal needs. In count VI, Hodges reasserted liability based on *respondeat superior*. At the conclusion of his complaint, Hodges requested that the court enter judgment in his favor and against defendants, "awarding compensatory damages, punitive damages, [and] attorney fees."

¶ 14        Defendants moved to dismiss Hodges amended complaint under section 2-619.1 of the Code. They argued that Hodges' claims against defendants in their official capacities were barred by the doctrine of sovereign immunity and that his request for injunctive relief should be dismissed

as moot. In the alternative, defendants argued that Hodges complaint should be dismissed pursuant to section 2-615 of the Code because his claims failed to allege facts indicating that defendants deprived him of any constitutional rights during the March 29 "shakedown" or that Pfister was personally involved in the alleged misconduct.

¶ 15    The trial court granted defendants' motion, holding that it lacked subjected matter jurisdiction over several claims based on the doctrine of sovereign immunity because defendants were acting within the scope of their employment. The court noted that the doctrine applied because defendant failed to allege sufficient facts to support his claim that defendants' conduct was willful and wanton or performed outside their official capacities. It concluded that Hodges was required to file his claims in the Court of Claims and dismissed his complaint with prejudice.

¶ 16                                II. ANALYSIS

¶ 17    Hodges challenges the trial court's dismissal of his amended complaint with prejudice under section 2-619.1 of the Code. He argues that sovereign immunity does not apply in this case and that his amended complaint provided sufficient facts to otherwise demonstrate that it is legally sufficient.

¶ 18    A motion to dismiss pursuant to section 2-619.1 allows a party to request dismissal of a complaint under both sections 2-615 and 2-619 of the Code. *Schloss v. Jumper*, 2014 IL App (4th) 121086, ¶ 15. In reviewing a motion to dismiss under section 2-615 or section 2-619, we must accept as true all well-pleaded facts and reasonable inferences that can be drawn from those facts and construe the allegations in the complaint in a light most favorable to the plaintiff. *Marshall v. Burger King*, 222 Ill. 2d 422, 429 (2006).

¶ 19    "A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint based on defects apparent on its face." *Doe v. Coe*, 2019 IL 123521, ¶ 31. A cause of action should not

be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall*, 222 Ill. 2d at 429. Nevertheless, Illinois is a fact-pleading jurisdiction. *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 55. Thus, while a plaintiff is not required to set forth evidence in the complaint, he or she must allege facts sufficient to bring a claim within a legally recognized cause of action. *Marshall*, 222 Ill. 2d at 429-30. Mere conclusions of law or facts unsupported by specific factual allegations in a complaint are insufficient to overcome a motion to dismiss for failure to state a cause of action upon which relief may be granted. *Midwest Medical Records Ass'n v. Brown*, 2018 IL App (1st) 163230, ¶ 12.

¶ 20 On the other hand, a motion to dismiss under section 2-619 admits the legal sufficiency of a claim, but asserts an affirmative matter that defeats it. *Bjork v. O'Meara*, 2013 IL 114044, ¶ 21. For example, a defendant may move to dismiss a plaintiff's claim under section 2-619 on the ground that the circuit court lacks subject matter jurisdiction or based on mootness. 735 ILCS 5/2-619(a)(1), (a)(9) (West 2018).

¶ 21 The trial court's dismissal of a complaint under 2-619.1 is reviewed *de novo*. *Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (2009). On appeal, we may affirm an order dismissing a complaint on any basis supported by the record, notwithstanding the trial court's rationale. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 34.

¶ 22                                   A. Section 1983 Claims

¶ 23 In counts I, II, and III, Hodges alleged that defendants violated his constitutional rights under section 1983 in both their official and individual capacities in that they (1) acted with deliberate indifference to his medical needs in violation of his eighth amendment rights by taking his prescription medication and his medical braces, (2) retaliated against him for exercising his

7

first amendment rights by destroying his legal documents, and (3) failed to intervene to protect his constitutional rights.

¶ 24                          1. *Official Capacity Claims against Defendants*

¶ 25        Section 1983 protects citizens' constitutional rights, privileges, and immunities from being infringed upon by state actors by allowing a plaintiff to bring a civil rights claim for deprivation of constitutional or statutory rights under the color of law. 42 U.S.C. § 1983 (2012); *Bilski v. Walker*, 392 Ill. App. 3d 153, 157 (2009). To establish a cause of action under section 1983, a plaintiff must demonstrate that (1) the person committing the conduct was acting under color of state law, and (2) his or her conduct deprived the plaintiff of rights, privileges or immunities secured by the constitution or the laws of the United States. *Id.* Both federal and state courts have recognized that a "person" under section 1983 excludes any state or any state actor who is acting in his or her official capacity. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989); *Kucinsky*, 2020 IL App (3d) 170719, ¶ 34.

¶ 26        In this case, the Department of Corrections is a state entity. See *Kucinsky*, 2020 IL App (3d) 170719, ¶ 47. As a result, a lawsuit against Pfister in his official capacity as the warden of a Department of Corrections facility is a suit against the State. *Id.* Moreover, a claim against a state employee is a claim against the State where (1) there are no allegations that the employee acted, albeit wrongfully, beyond the scope of his or her authority, (2) the duty alleged to have been breached was not owed to the public generally, and (3) the employee's actions involve matters ordinarily within his or her official functions for the State. *Murphy v. Smith*, 844 F.3d 653, 658 (7th Cir. 2016). Thus, the claims against Williams and Taylor in their official capacities as state employees cannot stand. See *Kucinsky*, 2020 IL App (3d) 170719, ¶ 51 (noting that acts performed by state employees within the scope of their official duties are protected by Illinois' sovereign

8

immunity). We therefore affirm the trial court's dismissal of Hodges' section 1983 claims against defendants in their official capacities.

¶ 27                    2. *Individual Capacity Claims against Pfister*

¶ 28         To recover damages pursuant to any theory under section 1983, a plaintiff must establish that a defendant was personally responsible for the constitutional deprivation. *Pepper v. Village of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005); see, *e.g.*, *Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (*respondeat superior* theory is not applicable in a section 1983 action). The defendant must know about the unlawful conduct and facilitate it, approve it, or condone it, acting knowingly or with deliberate reckless indifference. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 73. The alleged mishandling of a grievance by a party who otherwise did not cause or participate in the underlying conduct does not state a claim for relief. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). There must be some connection or affirmative link between the conduct complained of and the individual against whom the section 1983 claim is made. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 73. At a minimum, an inmate must establish that an official failed to act "despite his knowledge of a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

¶ 29         Here, Hodges alleged that Pfister showed "deliberate indifference to his serious medical needs" and failed to intervene with "malice and with reckless indifference" by denying his emergency grievance in violation of his eighth amendment rights. However, he provided no insight into Pfister's conduct or his direct participation in the deliberate deprivation of his rights. He merely alleged that Pfister acted with malice and reckless indifference by denying his emergency grievance. Hodges allegations that Pfister reviewed and denied his emergency grievance, however, do not show that Pfister *participated* in the conduct that gave rise to the grievance, as is necessary

9

to establish section 1983 liability. See *Owens*, 635 F.3d at 953 (denial of grievance does not establish prison official participated in the underlying conduct).

¶ 30    Moreover, a review of the record demonstrates that Pfister had no knowledge of substantial risk of serious harm. At the time Pfister reviewed the emergency grievance, Hodges' prescription medication had been renewed and his medical braces had been replaced. Thus, he did not face continued risk of harm when Pfister denied his grievance. Given that Hodges' failed to provide any factual allegations to support his conclusory assertions that Pfister deliberately and maliciously disregarded his needs, we affirm the dismissal of Hodges' section 1983 claims against Pfister individually. See *Marshall*, 222 Ill. 2d at 429-30 (plaintiff must allege facts, not mere conclusions, to bring a claim within a legally recognized cause of action).

¶ 31    *3. Individual Capacity Claims against Williams and Taylor*

¶ 32    Next, Hodges alleged that Williams and Taylor (1) acted with deliberate indifference to his serious medical needs by taking his medication and medical braces, and (2) retaliated against him to suppress his first amendment rights by destroying legal papers related to his postconviction proceedings.

¶ 33    Unlike the individual claims against Pfister, Hodges included facts in his complaint alleging that Williams and Taylor were personally involved in these constitutional violations. Defendants do not contest that these facts were well-pleaded and established that Williams and Taylor were directly responsible for the alleged deprivations. See *id.* (at the motion to dismiss stage, we must accept as true all well-pleaded facts). The disputed issue is whether the individual claims against Williams and Taylor state a legally recognizable cause of action under section 1983.

¶ 34    a. Deliberate Indifference

10

¶ 35     To state an eighth amendment claim for deliberate indifference to a serious medical need, an inmate must allege that (1) the defendant was responsible for the inmate's medical care, (2) the defendant knowingly and unreasonably disregarded an objectively intolerable risk of harm to the prisoner's health and safety, and (3) the prisoner suffered serious harm as a result. *McNeil v. Brewer*, 304 Ill. App. 3d 1050, 1053 (1999). The claim that a prison official acted with deliberate indifference to an inmate's serious health risk includes both an objective and subjective component. *LaBrec v. Walker*, 948 F.3d 836, 843 (7th Cir. 2020) (citing *Farmer*, 511 U.S. at 838). First, the harm to which the inmate was exposed must be objectively serious. *Id.* Second, the prison official must have had actual knowledge of that risk and consciously disregarded it. *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

¶ 36     The deliberate indifference standard reflects a mental state more blameworthy than negligence, or even gross negligence; "the conduct must be reckless in the criminal sense." *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008). For example, deliberate indifference may occur where a prison official, having knowledge of a significant risk to inmate health or safety, administers "blatantly inappropriate" medical treatment. *Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007). Prison officials who respond reasonably to a substantial risk of harm are not liable, regardless of whether the harm was averted. *LaBrec*, 948 F.3d at 843.

¶ 37     In this case, Hodges failed to allege facts to support a claim for deliberate indifference to his medical needs. There are no allegations in the complaint showing that Williams and Taylor were subjectively aware of and disregarded a substantial risk of harm. Hodges alleged that Williams took his items during her search, that Hodges later told Brewer he needed the items for his pain, and that Brewer told him that Williams and Taylor removed the items from his cell. These

11

allegations do not support Hodge's conclusion that defendants intentionally and recklessly disregarded his health.

¶ 38    Moreover, Hodges did not allege any facts to support the claim that Williams and Taylor knew that Hodges faced a substantial risk of harm when they removed the items, or that they knew Hodges would have difficulty procuring their return. In fact, according to the counselor's response to Hodges' grievance, Williams and Taylor believed the items had been properly inventoried. Hodges' claims of deliberate indifference are further refuted by his own factual allegations that prison officials arranged for him to see Stateville medical staff and replaced the missing medication and braces shortly after the search. Under these circumstances, Hodges has not stated an eighth amendment claim for deliberate indifference against Williams and Taylor.

¶ 39                                    b. Retaliation

¶ 40    To state a section 1983 claim for retaliation under the first amendment, a plaintiff must allege that prison officials retaliated against him or her for exercising a constitutionally protected right. *Kucinsky*, 2020 IL App (3d) 170719, ¶ 65. "In asserting a first amendment retaliation claim, an inmate must allege that (1) he engaged in activity protected by the first amendment, (2) he experienced an adverse action that would likely deter first amendment activity in the future, and (3) the first amendment activity was at least a motivating factor in the defendants' decision to take the retaliatory action." *Id.*

¶ 41    Defendants do not dispute that Hodges sufficiently alleged he was engaged in activity protected by the first amendment. Inmates have a first amendment right to file nonfrivolous grievances against prison officials. See *id.* ¶ 66 (citing *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012)). Therefore, Hodges sufficiently alleged that he engaged in constitutionally protected conduct.

12

¶ 42    Hodges also sufficiently alleged that he experienced adverse action that would likely deter first amendment activity in the future. An "adverse action" is one "capable of deterring a person of ordinary firmness from exercising his or her constitutional rights." *Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). The relevant standard for determining the effect retaliation would have on an ordinary person is objective, not subjective. *Fillmore v. Walker*, 2013 IL App (4th) 120533, ¶ 50. In his complaint, Hodges specifically stated that the adverse action of taking his medication and braces caused him physical pain and suffering. He further alleged that by destroying his legal papers, Williams and Taylor interfered with his ability to present adequate evidence in his postconviction proceedings and denied him a fair evidentiary hearing. Accepting the allegations as true, we can infer that the adverse actions William and Taylor allegedly committed against Hodges would deter an ordinary person from exercising his first amendment right to file another grievance.

¶ 43    Additionally, Hodges met the pleading requirements for demonstrating that his first amendment activity was at least a motivating factor in Williams and Taylor's decision to take retaliatory action. "An act in retaliation for the exercise of a constitutionally protected right is actionable under section 1983 even if the act, when taken for different reasons, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987). In this case, Hodges alleged that after he filed numerous grievances against other correctional officers, Williams and Taylor conducted a "shake-down" of his cell and instructed him to pack a segregation bag. The correctional officers then removed his medication and medical braces from the bag, destroyed some necessary legal papers in the bag, and, upon subsequent inquiry, referenced Hodges' proclivity to file grievances. We conclude that these allegations are sufficient to establish that Hodge's first amendment activity was at least a motiving factor in defendants' decision to take

13

retaliatory action. See *Kucinsky*, 2020 IL App (3d) 170719, ¶¶ 70-71 (defendants' acts of conducting a cell shakedown and placing inmate in segregation, coupled with defendants' comments, were sufficient to withstand a motion to dismiss inmate's section 1983 retaliation claim). Hodges, therefore, sufficiently alleged a first amendment retaliation claim against defendants Williams and Taylor. Consequently, we reverse the trial court's dismissal of count II against Williams and Taylor.

¶ 44                                    B. State Law Claims

¶ 45        In counts IV, V, and VI, Hodges asserted claims for negligence and intentional infliction of emotional distress against defendants and the State of Illinois.

¶ 46        The State Lawsuit Immunity Act provides, with limited exceptions that do not apply here, that "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2018). Furthermore, section 8(d) of the Court of Claims Act grants the Court of Claims exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort, if a like cause of action would lie against a private person or corporation in a civil suit***." 705 ILCS 505/8(d) (West 2018). The purpose of these sovereign immunity provisions is to protect the State from interference with the performance of governmental functions and to preserve and protect state funds. *Leetaru v. Board of Trustees of University of Illinois*, 2015 IL 117485, ¶ 47. Where sovereign immunity applies, the circuit court is without jurisdiction. *Brandon v. Bonell*, 368 Ill. App. 3d 492, 503 (2006).

¶ 47        Whether an action is one against the State and therefore one that must be brought in the Court of Claims, depends on the issues involved in the case and the relief sought. *Leetaru*, 2015 IL 117485, ¶ 45. The application of sovereign immunity cannot be avoided by making an action

14

nominally against the employees or agents of the State when the real claim is against the State of Illinois itself. *Id.*

¶ 48　　　　A tort claim against a state employee will be considered one against the State where (1) there is no allegation that the employee of the State acted beyond the scope of his or her authority, (2) the duty alleged to have been breached was not owed to the public generally independent of the defendant's State employment, and (3) the complained-of actions involve matters ordinary within the employee's normal and official functions of the State. *Jinkins v. Lee*, 209 Ill. 2d 320, 330 (2004). The doctrine of sovereign immunity "affords no protection, however, when it is alleged that the State's agent acted in violation of statutory or constitutional law or in excess of his authority, and in those instances an action may be brought in circuit court." *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). When a tort claim is brought against a state employee in his or her individual capacity but judgment in the plaintiff's favor could subject the State to liability, the claim must be filed in the Court of Claims. *Currie v. Lao*, 148 Ill. 2d 151, 158 (1992).

¶ 49　　　　Here, counts IV and V of Hodges' complaint do not allege that the correction officers or the warden acted beyond the scope of their authority or that their actions fell outside of their normal and official functions. Instead, reading Hodges' complaint liberally, his tort claims appear to center on whether defendants breached a duty of care they owed independently of their state employment.

¶ 50　　　　The determination of whether an employee has breached a duty owed independently of his employment is guided by the "source of the duty" test established by our supreme court in *Currie*. See *Jinkins,* 209 Ill. 2d at 331 (citing *Currie*, 148 Ill. 2d at 158-60). According to that test, to determine if sovereign immunity protects an employee for his own act of negligence, we must look to the source of the duty the employee is charged with breaching in committing the negligent act. *Currie*, 148 Ill. 2d at 159. Where the charged act of negligence arises out of a breach of a duty

15

that is imposed solely by virtue of the defendant's state employment, sovereign immunity will bar the plaintiff's claim in circuit court. *Id.*

¶ 51 In this case, Hodges' complaint alleged that defendants breached a duty of care in conducting the shakedown of his cell, imposing subsequent segregation, and denying his emergency grievance. The source of the duty, in each situation, is imposed solely by virtue of defendants' state employment. Thus, the trial court properly dismissed the tort claims based on sovereign immunity. The Court of Claims has exclusive jurisdiction over Hodges' state law claims because they are tort claims against the State and Hodges sought to hold the State liable for monetary damages. See 705 ILCS 505/8(d) (West 2018) (Court of Claims has exclusive jurisdiction over "[a]ll claims against the State for damages in cases sounding in tort").

¶ 52 Hodges argues that sovereign immunity does not apply because defendants violated department policies and negligently removed his medication, medical braces, and legal documents from his bags. However, sovereign immunity may bar a tort claim *even if* the state employee's conduct was a violation of state policy or misguided and irresponsible. See *Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1049 (2009) (negligence action against university coaches properly dismissed where student failed to establish that coaches owed duty to student independent of their state employment); *Cortright v. Doyle*, 386 Ill. App. 3d 895, 904-05 (2008) (intentional tort claim against Department of Children and Family Services supervisors was barred by sovereign immunity where the alleged conduct, no matter how misguided, was work-related and unique to their capacity as supervisors). The threshold question is whether the employees intended to perform some function within the scope of their authority when they committed the legal wrong. *Jackson v. Alverez*, 358 Ill. App. 3d 555, 561 (2005). Here, defendants were performing their jobs as state employees within the purview of their normal and official functions when the alleged

16

conduct occurred. Consequently, the doctrine of sovereign immunity bars Hodges' state law claims, except in the Court of Claims.

¶ 53                                    III. CONCLUSION

¶ 54        For the foregoing reasons, the judgment of the circuit court of Will County is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

¶ 55        Affirmed in part and reversed in part; cause remanded.

¶ 56        JUSTICE McDADE, concurring in part and dissenting in part:

¶ 57        I concur with all portions of the majority decision except the finding that Hodges has failed to state a claim of deliberate indifference against defendants, Michelle Williams and Sergeant Al Taylor, in their individual capacities. The two bases asserted for the majority's finding are that: (1) "There are no allegations in the complaint showing that Williams and Taylor were subjectively aware of and disregarded a substantial risk of harm." and (2) "Hodges did not allege any facts to support the claim that Williams and Taylor knew that Hodges faced a substantial risk of harm when they removed the items, or that they knew Hodges would have difficulty procuring their return."

¶ 58        To reiterate the standard under which we conduct our *de novo* review: "we must accept as true all well-pleaded facts and reasonable inferences that can be drawn from those facts and construe the allegations in the complaint in a light most favorable to the plaintiff. *Marshall v. Burger King*, 222 Ill.2d 422, 429 (2006)." *Supra* ¶ 18. Based on this standard and considering the facts alleged in Hodges' complaint, I would reach the opposite conclusion and find the allegations, together with reasonable inferences, are sufficient to state the claim.

¶ 59        The majority finds that Hodges has made no allegations showing that Williams and Taylor "were subjectively aware of and disregarded a substantial risk of harm." *Supra* ¶ 27. I do not agree.

17

Hodges, as to both defendants, alleged that he was directed to self-pack a "segregation bag" with items that he was "allowed" to take with him. Among the allowed items he packed were his prescribed (misspelled as "proscribed") pain medication and "permitted" medical supports (also prescribed, Complaint, ¶ 24). He further alleged that the permits for these items, which were elbow, wrist, and abdominal braces, were properly on file. In sum, all of the items had been prescribed by one or more doctors; all were "allowed," and the support items were "permitted" for his possession.

¶ 60 These facts would unambiguously indicate that a medical provider had found them medically necessary and that Hodges' possession and use of the items while in segregation was authorized. More significantly, the fact they had been prescribed would strongly imply, and we could therefore reasonably infer, that Hodges experienced a level of pain requiring medical intervention and some form of joint and/or muscle impairment requiring stabilization. The allegations that they were "permitted" and that the permits were on file allow us to reasonably infer that Hodges, while in segregation, was allowed to retain and use the pain medication at the dosage and on the schedule prescribed; was allowed to retain and use the braces/supports on the appropriate schedule; and that Williams and Taylor knew of that permission. Moreover, none of the facts set out in Hodges' complaint states or implies that Williams or Taylor possessed a level of medical expertise or occupied positions in the prison command structure authorizing them to countermand either the medical prescriptions/orders or the permits. As to the majority's assertion that there were "no facts to support the claim that Williams and Taylor***knew Hodges would have difficulty procuring [the items'] return;" Hodges alleged they knew he was in segregation; they had taken him there. It would be reasonable to infer they knew how segregation works and they would have anticipated or predicted the futility of Hodges' alleged interaction with C/O Brewer (Complaint, ¶¶ 18-20).

18

¶ 61    The majority also asserts that "Hodges' claims of deliberate indifference are further refuted by his own factual allegations that prison officials arranged for him to see Statesville medical staff and replaced the missing medication and braces shortly after the search." (Emphasis added.) Again, I disagree.

¶ 62    In his complaint Hodges alleged his medical supplies were removed from his segregation bag on March 29 (Complaint, ¶¶ 14-16); that, seeking renewal of his pain medication and reissuance of his medical supports, he was seen 3 weeks later, on April 18, by Dr. Williams (Complaint, ¶ 22); and 10 to 12 days thereafter (April 28-30) he received pain medication but no braces (Complaint, ¶ 23). He has thus alleged he was without his prescribed medication for 31 to 33 days and his support items for even longer.

¶ 63    I suppose "shortly" is in the eye of the beholder. Certainly, I would not so characterize a full month or more without pain medication prescribed as medically necessary by a doctor if it were my pain relief at issue and I cannot find that to be a reasonable inference from the allegations.

¶ 64    On a final note, Hodges further alleges that the medical supports/braces had been prescribed to avoid the necessity of replicating, on his left arm, surgery he had already had on his right arm. (Complaint, ¶ 24). While, arguably, we cannot reasonably infer that specific information was known to these defendants because we have no factual allegations giving rise to such an inference, I would find that, as outlined above, the other allegations made by Hodges are sufficient to support an Eighth Amendment claim for deprivation of these medical items.

¶ 65    I would find that Hodges' allegations, taken as true, and inferences reasonably drawn from them are sufficient to state a claim. And, if deemed not wholly sufficient as currently pled, they are more than adequate to show the likely ability to state a viable claim and thus to merit a dismissal

19

without prejudice and an opportunity to replead. I therefore respectfully dissent from the majority's contrary affirmance of the circuit court's dismissal of this claim with prejudice.