In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2981

Joseph Ruffino, Randall A. Noble,
and Emmett Doherty,

Plaintiffs-Appellees,

v.

Michael Sheahan, individually and in his
official capacity as Sheriff of Cook County,
Illinois,

Defendant-Appellant.


Appeal from the United States District Court
for the
Northern District of Illinois, Eastern
Division.
Nos. 96 C 2234 & 97 C 5670--George W. Lindberg,
Judge.


Argued December 10, 1999--Decided June 27,
2000



   Before Easterbrook, Rovner, and Diane P.
Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge.  This is an
interlocutory appeal that never should
have seen the light of day. For the most
part, it presents questions over which
this court has no appellate jurisdiction;
the only other issue is one that was
forfeited in the court below and that is
without merit in any event. On the eve of
trial, Michael Sheahan, the Sheriff of
Cook County, Illinois, made a last-ditch
effort to avoid final adjudication of the
civil rights case that three sheriffs'
deputies brought against him by taking an
appeal from the district court's decision
refusing to grant his motion for
dismissal on qualified immunity grounds.
The district court concluded that
dismissal would be premature, because the
resolution of the immunity issue depended
upon disputed issues of fact. The
Sheriff's attorneys convinced a panel of
this court to stay the start of the trial

while he attempted this appeal. On interlocutory appeal, we have enough of the record before us to conclude that the Sheriff not only cannot prevail on his immunity defense at this stage of the proceedings, but also that his arguments are so lacking in merit that he must show cause why he should not be sanctioned for filing this appeal.

I

The underlying action concerns the internal operations of the Sheriff's office. In the late 1980s and early 1990s, the FBI was investigating corruption in that office. It learned that the Merit Board certification process, an examination regime through which deputy sheriffs were selected, was compromised, and perhaps as many as 300 people had been certified for employment even though they did not meet the necessary requirements.

In 1990, Sheriff Michael Sheahan, a Democrat, was elected to replace Sheriff James O'Grady, a Republican. Upon taking office, Sheahan promised to clean things up. His efforts to do so took on added urgency as the 1994 re-election campaign began in earnest. In August 1994, two months before the general election and after the FBI investigation had been underway for some time, Sheahan held a press conference and announced that he was bringing 30 deputies before the Merit Board to seek their dismissal. Sheahan claimed that he selected the 30 individuals based on their seniority, but the targets had a different explanation. They claimed that they had been singled out because of their support for O'Grady in the 1990 election, their support for the Republican Party in general, and their failure to contribute to the Democratic Party.

The Merit Board dismissed the 1994 complaints in July 1995, but the Sheriff pressed on, filing new charges before the Board in August 1995. The latter charges were dropped only in May 1998. Between the start of the first round of charges and the dismissal of the second, the 30 affected individuals were stripped of their rank, declared ineligible for overtime, barred from consideration for promotion, and denied weapons permits (which had the undesirable collateral

effect of making it impossible for them to work lucrative private security jobs during their off-hours).

Among the group of 30 were the three plaintiffs in this case, Joseph Ruffino, Randall Noble, and Emmett Doherty. Each of these men held the title of "deputy sheriff." In that capacity, they worked as guards at various Cook County court facilities, where they performed services such as checking employee and attorney identification cards, operating scanning devices at the entrances to court facilities, and providing security in courtrooms and lock-up areas. They worked under an immediate supervisor located at the same facility. During the 1990 campaign, Ruffino and Doherty had both worked for O'Grady's re-election; Noble had posted O'Grady signs in his yard and put O'Grady bumper stickers on his car. In March 1994, just before the primary election, Noble appeared on television to discuss an allegation of bribery leveled at a high-ranking official in Sheriff Sheahan's administration--a matter Noble believed was being covered up. Noble also decided to run as a write-in candidate in the general election and to distribute anti-Sheahan literature.

II

On April 17, 1996, Ruffino and Noble responded to Sheahan's decision to bring them before the Merit Board by filing a five count complaint against him in both his individual and official capacities, alleging that he acted under color of law to deprive them of their First and Fourteenth Amendment rights, in violation of 42 U.S.C. sec. 1983, and alleging that he had violated certain state laws. On August 11, 1997, Doherty filed a complaint alleging only the federal civil rights violations similar to those that the other two had raised. In a series of rulings, the district court eliminated everything from the case except various claims against Sheahan in his official capacity and the First Amendment claims Ruffino, Noble, and Doherty are asserting against him in his individual capacity. The Sheriff moved for summary judgment on those claims, arguing that even if he did attempt to fire the three deputies for patronage reasons, his decision to do so was consistent with Illinois law and furthered the public's interest in

rooting out corruption. He claimed that the deprivations the plaintiffs suffered were so trivial that they could not, as a matter of law, establish a constitutional violation. He also argued that he acted in good faith. At no time did he breathe a word before the district court hinting that his actions were at least debatably legitimate because the deputies in question were policymakers.

The district court decided first that it is not necessary for a First Amendment claim to show the kind of loss of a property interest that would support a Fourteenth Amendment claim, citing Rutan v. Republican Party of Illinois, 497 U.S. 62, 73 (1990), and Swick v. City of Chicago, 11 F.3d 85, 87 (7th Cir. 1993). To the contrary, said the court, under Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982), a campaign of harassment or disciplinary actions based on political affiliation can violate the First Amendment by chilling the exercise of the public employee's constitutional rights. Finding also that the facts concerning the way the 30 deputies were selected for termination proceedings were disputed, the court decided that dismissal on immunity grounds was inappropriate.
III

As the case reaches us, there are three potential issues on appeal: (1) whether the district court correctly rejected the Sheriff's qualified immunity claim for the official capacity counts; (2) whether the Sheriff may at this point attack the district court's qualified immunity decision on the ground that the deputies were all policymakers and thus subject to firing under a fair reading of the contemporaneous law; and (3) whether the district court's decision rejecting qualified immunity was correct. As we explain briefly below, we have no jurisdiction to consider the first or third of these issues, and the Sheriff has waived the second.

The doctrine of qualified immunity exists to protect public officials performing discretionary functions from civil damages. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Official capacity suits do not, by definition, place the public official at risk of personal liability. Instead, they implicate the public fisc. A plaintiff seeking to

pursue an official capacity claim must be able to point to a theory that entitles it to sue the public agency. In Monell v. Dept. of Soc. Serv. of the City of New York, 436 U.S. 658, 690 (1978), the Supreme Court held that municipalities are "persons" for purposes of 42 U.S.C. sec. 1983. See also Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 403 (1997). In Illinois, the office of the Sheriff as an institutional matter is also ordinarily a suable entity under sec. 1983. See Scott v. O'Grady, 975 F.2d 366, 370 (7th Cir. 1992). See also Ill. Const. art. 7, sec. 4(C) (sheriff is a county official). To take an obvious counter-example, a state itself cannot be sued for civil damages in the absence of a valid abrogation of Eleventh Amendment sovereign immunity or a valid waiver of those rights. Fitzpatrick v. Bitzer, 427 U.S. 445, 455–56 (1976) (allowing damages action where Congress acted pursuant to Fourteenth Amendment powers); Edelman v. Jordan, 415 U.S. 651, 664-65 (1974) (disallowing monetary awards generally). Because the rationale that supports qualified immunity from suit in individual capacity cases is absent in official capacity cases, it is well established that the qualified immunity doctrine does not apply to official capacity claims. Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999); Ruehman v. Sheahan, 34 F.3d 525, 527 (7th Cir. 1994); Ying Jing Gan v. City of New York, 996 F.2d 522, 529 (2d Cir. 1993). Since the Sheriff's first ground of appeal does not, therefore, even implicate a valid branch of the qualified immunity doctrine, and there is neither a final judgment in the case nor another ground supporting an interlocutory appeal, we have no jurisdiction to consider it.

Next, the Sheriff tries to claim that under this court's decisions in Upton v. Thompson, 930 F.2d 1209 (7th Cir. 1991), and Wallace v. Benware, 67 F.3d 655 (7th Cir. 1995), it was not clearly established in 1994 that patronage dismissals of deputy sheriffs could as a matter of law violate the deputies' First Amendment rights. The law of qualified immunity requires a plaintiff to show (1) that she has asserted a violation of a constitutional right, and (2) that the right in question was clearly established at the time of the challenged action.

See, e.g., Erwin v. Daley, 92 F.3d 521, 525 (7th Cir. 1996). The Sheriff's argument focuses on the second of those two factors.

   As counsel for the Sheriff conceded at oral argument, however, the Sheriff did not raise this point at all before the district court. Sheriff Sheahan's two memoranda in that court raise other arguments supporting immunity, but none have anything to do with the so-called policymaker exception he is now raising. We note as well that it would be a remarkable extension of the policymaker line of cases to hold that the hundreds of deputy sheriffs in Cook County are all policymakers, for whom the Sheriff has a legitimate interest in insisting on personal and political loyalty. As Branti v. Finkel, 445 U.S. 507, 518 (1980), Flenner v. Sheahan, 107 F.3d 459, 463-64 (7th Cir. 1997), and even Upton itself, 930 F.2d at 1215-16, make clear, the application of the policymaker exception depends on the particular job functions of the employees in question. Over what would these deputy sheriffs, who were serving as court security officers, be making policy? How to operate the security screening machines? Whom to allow in the courtrooms? But we need not tarry over those questions, because it is so clear that the Sheriff waived this argument that we reject it on that ground alone.    Last, we consider the question whether we have jurisdiction over the Sheriff's contentions that he had qualified immunity for the claims dealing with his attempted discharges and petty harassment of the plaintiff deputies. The district court found, and we agree, that resolution of these questions depends critically on disputed issues of fact. The Sheriff argues that he tried to dismiss the 30-deputy group for reasons relating to the corruption probe and their qualifications for certification; the plaintiffs respond that no such thing was happening, and that they were being targeted for political reasons. If the former is true (even though the Merit Board eventually dismissed the proceedings), then the Sheriff may prevail; if the latter is true, principles as old and well-established as those articulated in Elrod v. Burns, 427 U.S. 347 (1976), indicate that the Sheriff violated the plaintiffs' First Amendment rights. Nothing but fact-

finding will resolve this point, and the same is true for the related harassment claims. Johnson v. Jones, 515 U.S. 304 (1995), a case which, remarkably, counsel for the Sheriff did not initially recall when asked about it at oral argument, spells the end of the Sheriff's appeal on this point. The issue before us is qualified immunity; the appeal is interlocutory; and its resolution depends on disputed issues of fact. Johnson holds that we have no jurisdiction over this issue, and we therefore must dismiss this part of appeal as well.

IV

The lower court told the parties that in its view, any "interlocutory appeal would be frivolous." We are inclined to agree, and so we hereby order that the Sheriff, in both his official and individual capacities, show cause as to why we should not impose sanctions under Fed. R. App. P. 38. Also, the plaintiffs should submit a statement of the pertinent costs and fees to this court within 14 days.

The appeal is Dismissed in part for want of jurisdiction; the decision below is Affirmed insofar as it is construed as an appeal from a denial of immunity on the waived policymaker theory.