NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2026 IL App (4th) 250310-U

NO. 4-25-0310

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 21, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| BRADLEY WALTERS, | ) | Appeal from the |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Ogle County |
| THE OGLE COUNTY SHERIFF'S OFFICE, | ) | No. 24LA19 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Anthony Peska, |
| | ) | Judge Presiding. |

JUSTICE VANCIL delivered the judgment of the court.
Justices Doherty and Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court did not err in granting defendant's motion to dismiss where plaintiff failed to allege a constitutional claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).

¶ 2   Plaintiff, Bradley Walters, is a federal detainee housed at the Ogle County jail while awaiting trial for federal criminal charges. In December 2024, plaintiff filed a first amended complaint against defendant, the Ogle County Sheriff's Office (Sheriff's Office), alleging various constitutional violations under section 1983 of the federal Civil Rights Act (42 U.S.C. § 1983 (2024)). The Sheriff's Office filed a motion to dismiss the complaint, which the trial court granted with prejudice.

¶ 3   Plaintiff appeals the dismissal of his civil rights complaint. We affirm.

¶ 4                              I. BACKGROUND

¶ 5   In May 2024, plaintiff filed a complaint pursuant to section 1983 against the

Sheriff's Office, Sergeant William White, Molly Engelkes (a nurse practitioner), and Stacy Cavanaugh (a nurse) (collectively, the original defendants). Plaintiff identified himself as a federal detainee who was being held at the Ogle County jail. White was an employee of the Sheriff's Office in charge of grievances in the jail. Engelkes and Cavanaugh were medical staff at the jail.

¶ 6        The complaint alleged the original defendants violated plaintiff's (1) first amendment (U.S. Const., amend. I) rights by not allowing him to complete the grievance and appeal process and ignoring his grievances, (2) fifth amendment (U.S. Const., amend. V) rights by denying him medical care, and (3) fourteenth amendment right to equal protection (U.S. Const., amend. XIV) by denying him reasonable medical care. Plaintiff also alleged medical negligence, medical indifference, negligence by lack of oversight, and negligence by failing to abide by Sheriff's Office policy.

¶ 7        The original defendants filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2024)).

¶ 8        In December 2024, before the trial court ruled on the original defendants' motion to dismiss, plaintiff filed a motion for leave to file an amended complaint, which attached his first amended complaint. The court granted plaintiff's motion, dismissed plaintiff's original complaint, and dismissed the original defendants' motion to dismiss as moot. Plaintiff's first amended complaint named only the Sheriff's Office as defendant. No documents were attached to the first amended complaint, although the complaint referenced exhibits.

¶ 9        In his first amended complaint, plaintiff alleged the Sheriff's Office violated his first amendment rights by failing to address his grievances and not allowing him to exhaust his legal remedies in order to seek judicial review. Plaintiff also alleged the Sheriff's Office violated

his fifth amendment due process rights and fourteenth amendment equal protection rights through his conditions of confinement and by denying him proper medical care.

¶ 10 The facts as presented in plaintiff's first amended complaint are as follows. Plaintiff was transferred to the Ogle County jail in November 2023. At the time of his transfer, he was under the care of two doctors, including Dr. Nathan Norem with Mercyhealth. On plaintiff's behalf, defendant submitted a request to the United States Marshals Service (U.S. Marshals) for plaintiff to get surgery on his right ankle. The U.S. Marshals denied the surgery but requested more information about plaintiff's condition, including a recommendation for surgery from Dr. Norem. Plaintiff filed a grievance requesting defendant contact Dr. Norem and request a letter recommending surgery. Defendant refused to contact Dr. Norem. Plaintiff simultaneously filed a medical request for the medical department to contact Dr. Norem for the letter of recommendation. The request was denied, referencing the aforementioned grievance. Plaintiff alleged the failure by defendant to follow the instructions from the U.S. Marshals and contact Dr. Norem resulted in plaintiff experiencing continued pain, increased mobility issues, and extended suffering.

¶ 11 Plaintiff was prescribed gabapentin, a nerve pain medication, by a doctor contracted with the Winnebago County jail prior to his transfer. After his arrival at the Ogle County jail, defendant refused to provide plaintiff with the prescribed medication. Defendant delayed and rescheduled plaintiff's appointment with Dr. Norem from April 14, 2024, to May 7, 2024, so defendant could contact Dr. Norem and notify him not to prescribe gabapentin to plaintiff. Rather than providing plaintiff with gabapentin, defendant prescribed plaintiff the antidepressant Cymbalta, which plaintiff referred to as a " 'happy pill.' " Plaintiff eventually refused to take Cymbalta. Plaintiff alleged it was defendant's policy to deny inmates gabapentin.

¶ 12        Plaintiff further alleged it was defendant's "widespread policy" to punish any inmate who requested medical attention or services "beyond cold tabs, Asprin [*sic*], or bandaids." Defendant placed inmates who requested a flu shot into restrictive housing or solitary confinement. It was the policy of the Ogle County jail to defer any medically necessary treatment until the inmate was released or transferred. Defendant failed to provide plaintiff with a treatment plain until he filed a complaint with the court. Plaintiff cited his complaint in Ogle County case No. 24-LA-24 and another inmate's case in Ogle County case No. 24-LA-44 as examples of defendant's policy of violating inmate's rights until a complaint was filed. In the other inmate's case, plaintiff alleged the inmate filed a complaint alleging excessive solitary confinement, and he was released from solitary confinement after the complaint was filed with the court.

¶ 13        Plaintiff also asserted his medical requests were closed without response and his grievances ignored. Plaintiff alleged he filed grievances pursuant to the medical requests, the grievance process itself, and his conditions of confinement.

¶ 14        The Sheriff's Office filed a motion to dismiss plaintiff's complaint pursuant to section 2-615 of the Code (*id.*). Defendant emphasized its identity as a municipal entity. Therefore, it asserted, plaintiff would need to present a section 1983 claim under the framework of *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). As to each of plaintiff's claims, defendant argued he failed to allege sufficient facts to state a cause of action under section 1983 against defendant and defendant cannot be held liable for the actions of its employees. Defendant also noted plaintiff failed to comply with section 2-603(b) of the Code, which requires "[e]ach separate cause of action upon which a separate recovery might be had shall be stated in a separate count." 735 ILCS 5/2-603(b) (West 2024).

¶ 15        Plaintiff filed a response to the motion to dismiss, in which he included factual details not included in his first amended complaint.

¶ 16        The trial court held a hearing on the motion to dismiss. After the hearing, the court granted defendant's motion to dismiss with prejudice.

¶ 17        This appeal followed.

¶ 18                            II. ANALYSIS

¶ 19        On appeal, plaintiff argues the trial court erred in granting defendant's motion to dismiss his complaint. Specifically, plaintiff contends his complaint demonstrated viable claims under section 1983 for violations of his first, fifth, and fourteenth amendment rights.

¶ 20                    A. Dismissal Pursuant to Section 2-615

¶ 21        Plaintiff's amended complaint was dismissed under section 2-615 of the Code (*id.* § 2-615). A motion to dismiss under section 2-615 attacks the legal sufficiency of the complaint. *Grant v. State*, 2018 IL App (4th) 170920, ¶ 12. When a section 2-615 motion to dismiss is filed, the movant argues the facts pleaded by the plaintiff do not state a cause of action. *Id.*

¶ 22        When considering the sufficiency of a complaint on review, we construe its allegations "in the light most favorable to the plaintiff" and "accept as true all well-pleaded facts and all reasonable inferences that may be drawn from those facts." *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). "A complaint should be dismissed under section 2-615 only if it is clearly apparent from the pleadings that no set of facts can be proved that would entitle the plaintiff to recovery." *Grant*, 2018 IL App (4th) 170920, ¶ 12.

¶ 23        Additionally, "Illinois is a fact-pleading jurisdiction." *Marshall*, 222 Ill. 2d at 429; see *Kucinsky v. Pfister*, 2020 IL App (3d) 170719, ¶ 55 (stating Illinois is a fact-pleading jurisdiction and "[f]act pleading imposes a heavier burden on the plaintiff, so that a complaint

that would survive a motion to dismiss in a notice-pleading jurisdiction (*e.g.*, in federal court) might not do so in a fact-pleading jurisdiction"). Thus, "[w]hile the plaintiff is not required to set forth evidence in the complaint [citation], [he or she] must allege facts sufficient to bring a claim within a legally recognized cause of action [citation], not simply conclusions." *Marshall*, 222 Ill. 2d at 429-30.

¶ 24        "In determining whether a cause of action has been stated, the whole complaint must be considered." (Internal quotation marks omitted.) *Kucinsky*, 2020 IL App (3d) 170719, ¶ 56. We review an order granting a section 2-615 motion to dismiss *de novo*. *Grant*, 2018 IL App (4th) 170920, ¶ 12. Ultimately, "[w]e may affirm an order dismissing a complaint on any basis supported by the record, regardless of the trial court's reasoning." *Kucinsky*, 2020 IL App (3d) 170719, ¶ 34.

¶ 25                                B. Section 1983

¶ 26        "Section 1983 protects citizens' constitutional rights, privileges, and immunities from being infringed by state actors." *Bilski v. Walker*, 392 Ill. App. 3d 153, 157 (2009). "[T]o establish a section 1983 cause of action, the plaintiff must show that (1) a person acting under color of state law committed the conduct complained of and (2) such conduct deprived him of rights, privileges, or immunities secured by the constitution or the laws of the United States." *Id.*

¶ 27        "Municipalities and other local governmental units are 'persons' within the meaning of section 1983." *Redwood v. Lierman*, 331 Ill. App. 3d 1073, 1086 (2002) (citing *Monell*, 436 U.S. at 690). However, the Supreme Court has held that *respondeat superior* liability does not exist under section 1983, stating:

> "[A] local government may not be sued under § 1983 for an injury inflicted solely
>
> by its employees or agents. Instead, it is when execution of a government's policy

\*\*\*, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694.

A local governmental unit may be liable for damages under section 1983 if the alleged unconstitutional act is caused by "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Department*, 604 F.3d 293, 303 (7th Cir. 2010) (citing *Monell*, 436 U.S. at 690). "A widespread custom claim requires showing that the conduct essentially constituted a governmental policy and was not an isolated incident." *DPH Aurora Properties, LLC v. City of Aurora*, 2025 IL App (2d) 240540, ¶ 67 (citing *Calhoun v. Ramsey*, 408 F.3d 375, 380 (7th Cir. 2005)). Further, even if the plaintiff identifies a policy or practice of the municipal defendant, he must also "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." (Emphasis in original.) *Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). In other words, "a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*

¶ 28         A county sheriff's office is a municipal entity and is ostensibly a viable defendant for a section 1983 *Monell* claim. See *Ruffino v. Sheahan*, 218 F.3d 697, 700 (7th Cir. 2000) ("In Illinois, the office of the Sheriff as an institutional matter is also ordinarily a suable entity under § 1983.").

¶ 29         In his reply brief, plaintiff contends *Monell* has no barring on his complaint

because he is a federal detainee held in a county jail. According to plaintiff, because the Sheriff's Office has an agreement with the federal government to house plaintiff in exchange for a financial benefit, *Monell* cannot limit his complaint. Plaintiff is incorrect. No agreement or financial benefit, nor plaintiff's status as a federal detainee in a county jail, can change the application of *Monell* to a section 1983 claim.

¶ 30                                  C. This Case

¶ 31            On appeal, plaintiff contends he presented viable claims against the Sheriff's Office for violations of his rights under the first, fifth, and fourteenth Amendments.

¶ 32                              1. *Well-Pleaded Facts*

¶ 33            We must first note what facts are relevant to this appeal. Plaintiff's brief on appeal contains a detailed account of his time in the Ogle County jail, including specific actions of various staff members of the Ogle County jail, far beyond the scope of his first amended complaint.

¶ 34            "[T]he question presented by a section 2-615 motion to dismiss is whether the plaintiff has *alleged* sufficient facts in the complaint which, if proved, would entitle the plaintiff to relief." (Emphasis in original.) *Hough v. Kalousek*, 279 Ill. App. 3d 855, 862 (1996). "The complaint must sufficiently set forth every essential fact to be proved." *Id.* A trial court's ruling on a motion to dismiss pursuant to section 2-615 "may not consider facts outside the four corners of the complaint." *Liddle v. Salem School District. No. 600*, 249 Ill. App. 3d 768, 770 (1993). This includes the facts plaintiff set forth in his response to defendant's motion to dismiss.

¶ 35            Additionally, we cannot consider the facts alleged in plaintiff's original complaint, which was filed against various staff members of Ogle County jail in addition to the Sheriff's Office. "Where an amendment is complete in itself and does not refer to or adopt the

prior pleading, the earlier pleading ceases to be a part of the record for most purposes, being in effect abandoned and withdrawn." *Bowman v. Lake County*, 29 Ill. 2d 268, 272 (1963). Here, the trial court expressly dismissed plaintiff's original complaint when it granted him leave to file his proposed first amended complaint.

¶ 36        The background presented by plaintiff in his brief on appeal contains many facts which were not present in the first amended complaint at issue on appeal. Our "sole task is to determine whether the allegations *in the complaint* are sufficient to set forth a cause of action for which relief may be granted." (Emphasis added.) *Baker v. Miller*, 159 Ill. 2d 249, 255 (1994). We therefore disregard any facts plaintiff has alleged on appeal which do not appear in the first amended complaint, including those facts only present in his original complaint or in his response to the motion to dismiss.

¶ 37                                2. Monell *Claim*

¶ 38        In his first amended complaint, plaintiff named only the Sheriff's Office, in its individual and official capacity, as a defendant. The Sheriff's Office is not an individual, but a municipal entity, and therefore plaintiff was required to state a *Monell* claim to allege section 1983 claims against defendant. See *Ruffino*, 218 F.3d at 700.

¶ 39        In his first amended complaint, plaintiff alleged the Sheriff's Office violated his first, fifth, and fourteenth amendment rights to due process, equal protection, access to the courts, and redress of his grievances. Plaintiff specifically alleged defendant had policies of (1) denying gabapentin to all inmates, (2) punishing any inmate who requested medical treatment beyond cold tabs, aspirin, or Band-Aids, (3) deferring necessary medical care until an inmate is released or transferred, (4) refusing to provide a treatment plan to inmates, and (5) violating inmates' rights until a complaint is filed in court. Plaintiff also alleged he received inadequate

medical care, his grievances were ignored or denied, and he was not allowed to exhaust his administrative remedies.

¶ 40    First, we note plaintiff made several allegations of Ogle County jail staff taking actions which violated his constitution rights. Although plaintiff did not explicitly plead a claim based on *respondeat superior*, the law is clear *respondeat superior* does not apply in section 1983 claims. See *Monell*, 436 U.S. at 694 ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents."). Any claim representing defendant is responsible for the actions of its employees is not viable.

¶ 41                            a. Grievance Process Claims

¶ 42    Plaintiff asserted several claims in relation to how his grievances were handled. First, it is imperative to note that inmates do not have a constitutional right to a grievance process. See *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (holding prison grievance procedures are not mandated by the first amendment); *Daniel v. Cook County*, 833 F.3d 728, 736 (7th Cir. 2016) ("[T]he Constitution does not require that jails or prisons provide a grievance procedure at all, nor does the existence of a grievance procedure create a constitutionally guaranteed right."). To the extent that any argument as to a constitutional deprivation could be made, plaintiff failed to allege any official or unofficial policy existed which led to his grievances being ignored or denied. Plaintiff gave very little information on the grievances other than that they were filed. The only grievance plaintiff mentions with any specificity was the grievance requesting defendant contact Dr. Norem after his surgery request was denied by the U.S. Marshals. Beyond that information, his first amended complaint does not give any reason grievances were filed or denied. Rather, plaintiff's first amended complaint suggests that, because he filed unsuccessful grievances, his rights were violated. This is woefully insufficient

to suggest any constitutional wrongdoing, much less a constitutional wrongdoing which originated from a policy of the Sheriff's Office. See *Marshall*, 222 Ill. 2d at 429-30; *Thomas*, 604 F.3d at 303; see also *Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.").

¶ 43    Insofar as plaintiff alleges the denial or disregarding of his grievances resulted in an inability to access the courts, plaintiff has not pointed to any instance when he was unable to access the courts. In order to demonstrate a claim for violation of his right of access to the courts, plaintiff must, in part, show "he suffered an actual injury, defined as actual prejudice to existing or impending litigation." *Romero v. O'Sullivan*, 302 Ill. App. 3d 1031, 1037 (1999). Plaintiff only offers the vague implication that he may have attempted to bring his grievances to the court. "A plaintiff seeking damages under [section] 1983 must allege an actual deprivation of rights resulting from the defendants' acts; mere possibility of remote or speculative injury or invasion of rights is insufficient." *Grassini v. DuPage Township*, 279 Ill. App. 3d 614, 623 (1996). Further, and most importantly, plaintiff has failed to allege there was a policy, custom, or practice in place which denied him access to the courts.

¶ 44    As plaintiff failed to plead any policy, custom, or practice of defendant existed which resulted in a violation of any constitutional right pertaining to how his grievances were handled, he has failed to properly bring a claim against defendant pursuant to *Monell*, and the trial court did not err in dismissing his grievance claims against the Sheriff's Office under section 2-615. See *Grant*, 2018 IL App (4th) 170920, ¶ 12.

¶ 45                              b. Conditions of Confinement

¶ 46    Plaintiff also made several claims as to the conditions of his confinement in Ogle County jail, particularly the medical care he received. Plaintiff alleged it was the policy of the

Sheriff's Office to (1) deny the medication gabapentin to all inmates, (2) punish any inmate who requested medical treatment beyond cold tabs, aspirin, or Band-Aids, (3) defer necessary medical care until an inmate is released or transferred, (4) refuse to provide a treatment plan to inmates, and (5) violate inmates' constitutional rights until a complaint is filed in court.

¶ 47          Conditions of confinement for pretrial detainees are derived from the due process clause of the fourteenth amendment (U.S. Const., amend. XIV, § 1). *Miranda v. County of Lake*, 900 F.3d 335, 350 (7th Cir. 2018). Whether conditions of detention for pretrial detainees are constitutional depends upon whether "those conditions amount to punishment of the detainee." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." *Id.* at 537. That detention of a pretrial detainee "interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.' " *Id.*

¶ 48          On appeal, plaintiff alludes to the "deliberate indifference" standard for his medical condition-of-confinement claims. Federal courts have used this standard, grafted from the eighth amendment (U.S. Const., amend. VIII), to analyze pretrial condition-of-confinement claims, which required a plaintiff to show "(1) the harm to the plaintiff was objectively serious; and (2) the official was deliberately indifferent to her health or safety." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005); *Miranda*, 900 F.3d at 350 (noting pretrial detainees were "entitled to at least" as much protection as the eighth amendment offered). However, the Seventh Circuit recently determined the Supreme Court's decision in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015), should be extended and all pretrial condition-of-confinement claims against individuals should be analyzed under an objective reasonableness standard. See *Miranda*, 900 F.3d at 352-

53; *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). Under the objective reasonableness standard adopted by the Seventh Circuit, a plaintiff must show, beyond harm and causation, "that the conditions in [the jail] posed an objectively serious threat to his health; that the officers' response was objectively unreasonable under the circumstances; and that they acted purposely, knowingly, or recklessly with respect to the consequences of their actions." *Mays v. Emanuele*, 853 Fed. Appx. 25, 26-27 (7th Cir. 2021).

¶ 49          So far, Illinois courts have not weighed in on this shift in standards, and federal circuits are split on the application of *Kingsley*. See *Miranda*, 900 F.3d at 351 (noting the Ninth and Second Circuits have extended *Kingsley* to other condition-of-confinement claims, but the Eighth, Eleventh, and Fifth Circuits have confined *Kingsley* to pretrial excessive-force allegations). However, both the objective reasonableness standard and the deliberate indifference standard are framed for section 1983 claims raised against individuals. In this case, plaintiff did not raise the claim against an individual, and *Monell* still applies. Therefore, plaintiff must allege enough facts to show a viable claim that the Sheriff's Office was the moving force behind the injury alleged, as well as enough facts to support a claim under the elements of the objective reasonableness standard or deliberate indifference standard. See *Brown*, 520 U.S. at 404. If plaintiff cannot demonstrate the Sheriff's Office was the moving force behind his alleged violation, he cannot sustain a civil rights claim under either standard.

¶ 50          Turning to plaintiff's specific claims, plaintiff first contends it was the policy of the Sheriff's Office to deny gabapentin to "the Plaintiff, and all inmates of the Ogle County Jail." Plaintiff does not elaborate on any official policy in place which denies inmates gabapentin or any other medication. Nor did he demonstrate a widespread custom resulted in the denial of his medication. The complaint makes no reference to any other instance of an inmate being denied

gabapentin. Although there is no bright-line rule defining a widespread practice or custom by the number of occurrences, generally, there must be more than one instance. See *DPH Aurora Properties, LLC*, 2025 IL App (2d) 240540, ¶ 67 ("A widespread custom claim requires showing that the conduct essentially constituted a governmental policy and was not an isolated incident."); *Thomas*, 604 F.3d at 303 ("[T]here is no clear consensus as to how frequently such conduct must occur to impose *Monell* liability, except that it must be more than one instance[ ] [citation], or even three." (Internal quotation marks omitted.)). On the facts in the complaint, we can accept as true at this stage that plaintiff had been prescribed gabapentin at another facility and that medical staff at the Ogle County jail refused to provide plaintiff with gabapentin. There is no suggestion beyond plaintiff's conclusory claim that any other inmate was denied any medication, much less that medication was denied due to an official or unofficial policy of the Sheriff's Office.

¶ 51    Similarly, plaintiff alleged the Sheriff's Office had a policy of punishing any inmate who requested medical treatment beyond "cold tabs, Asprin [*sic*], or bandaids." Yet, plaintiff did not offer a single example of any inmate, including himself, being punished for seeking medical attention. Plaintiff did allege an inmate would be placed in restrictive housing or solitary confinement for requesting a seasonal flu shot, referencing exhibits which were not included with his complaint. Even if we assume such a policy existed, plaintiff did not allege he or anyone else avoided getting a flu shot or requested a flu shot and was actually placed in restrictive housing or solitary confinement. Without an actual constitutional violation, plaintiff cannot sustain a claim against the Sheriff's Office. See *Petty*, 754 F.3d at 424 ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.); *Grassini*, 279 Ill. App. 3d at 623 ("[M]ere possibility of remote or speculative injury or invasion

- 14 -

of rights is insufficient.").

¶ 52   Next, plaintiff alleged the Sheriff's Office would defer necessary medical care until an inmate was transferred or released. However, plaintiff does not point to any actual instance when his medical care was deferred. Plaintiff noted his appointment with Dr. Norem was delayed from April 17, 2024, to May 7, 2024, but plaintiff alleged this appointment was rescheduled so jail staff could contact Dr. Norem to direct him to deny plaintiff gabapentin. A single appointment rescheduled by three weeks is not at all suggestive of a systematic deferring of medical care. See *DPH Aurora Properties, LLC*, 2025 IL App (2d) 240540, ¶ 67. As to plaintiff's potential surgery, it was not the Sheriff's Office which denied the surgery. Plaintiff stated in his complaint that the medical department submitted his request for surgery to the U.S. Marshals. The U.S. Marshals then denied the surgery, though it gave plaintiff the option to provide more documentation. If it was the policy of the Sheriff's Office to defer necessary medical care until an inmate was released or transferred, it follows plaintiff's request for surgery would not have been submitted in the first place. Further, even if employees of the jail did not assist plaintiff in getting more documentation after the U.S. Marshals denied the surgery request, plaintiff still provided no facts to suggest this was due to a policy, practice, or custom in place. See *Brown*, 520 U.S. at 404.

¶ 53   Finally, plaintiff alleged it was the policy of the Sheriff's Office to violate inmates' rights until they filed a complaint in court. It is not entirely clear which rights plaintiff is referring to here. Plaintiff includes this claim in the context of his other claims the Sheriff's Office failed to provide him with a treatment plan. However, as examples of the alleged policy, plaintiff points to another complaint he filed, which he does not explain, and a complaint filed by another inmate. According to plaintiff, the other inmate filed a complaint that he received

excessive solitary confinement, and the inmate was released from solitary confinement after the complaint was filed. First, plaintiff's undiscussed other complaint and one instance of an inmate filing a complaint over alleged solitary confinement misuse is insufficient to demonstrate an overt policy or widespread custom of continuing constitutional violations until an inmate's concerns reach the court. See *Thomas*, 604 F.3d at 303. Only the solitary confinement case confidently raises a potential constitutional issue, and even so, we do not know why that inmate was placed in solitary confinement nor why he was removed. But regardless, plaintiff still failed to explain what constitutional violation was *actually occurring* that the supposed policy of the Sheriff's Office was allowing to continue. See *Petty*, 754 F.3d at 424 ("[I]f no constitutional violation occurred in the first place, a *Monell* claim cannot be supported.). Plaintiff alleged he was not provided a treatment plain until he filed a complaint with the court, which "would include doctor's [appointments], physical therapy, [proper] medication[,] and discussions about the injury." However, we can contemplate no constitutional right to a documented "treatment plan." Certainly, plaintiff has not adequately alleged a connection between his claim he was not given a treatment plan and the other inmate's claim of excessive solitary confinement to even suggest an actual policy or practice of the Sheriff's Office.

¶ 54    As with his grievance claims, plaintiff has failed to (1) adequately plead any policy, custom, or practice of the Sheriff's Office existed which resulted in a violation of any constitutional right pertaining to his conditions of confinement and (2) properly bring a claim against defendant pursuant to *Monell*. As such, the trial court did not err in dismissing his condition-of-confinement claims against the Sheriff's Office under section 2-615. See *Grant*, 2018 IL App (4th) 170920, ¶ 12.

¶ 55    III. CONCLUSION

¶ 56        For the reasons stated, we affirm the trial court's judgment.

¶ 57        Affirmed.